I want to thank the panel for the opportunity to discuss with you a very important matter regarding Mr. Blayne Williams. And I do want to start my discussion with you by talking a little bit about Mr. Williams because of how this whole matter has evolved. I think that the way the brief for the city has been put forth, it raises issues about character and things of that nature. And Mr. Williams is a fine and upstanding human being. Is he still an officer with the police department? No, Your Honor. The first day back at work they found something wrong after that and so that one's in litigation as well. But he's here today with me. But the problem with these matters... I have a big picture question before you dive into the specific legal issues. He gets indefinitely suspended but then that is reversed and he gets back pay, I think except for the 15-day suspension that was what ended up being the official penalty. So are those the only damages here, the 15 days of pay that this... At least on your indefinite suspension claim, I know there's some talk about failure to promote but on the indefinite suspension challenge, is it just down to those 15 days of pay given the back pay award? No, Your Honor, because during that time period he had no access to his health benefits and during that same time period as well he lost the opportunity to work off-duty employment. And, Your Honor, most officers have a great dependence on off-duty employment and so not only did Mr. Williams lose off-duty employment but after the Hyatt wasn't cooperative in this situation, the Hyatt contract was rescinded. So he was no longer able... So even if... Remind me, how long was the period when he was under indefinite suspension before it was reversed? He was in indefinite suspension from May of 13 until... Oh, no, excuse me, October of 13 until November or December of 14. So 14 months I think it was, pretty close to that. But once a police chief decides that they have issues with a police officer, because of the nature of police work, you can find anything wrong with what they do because it's subjective. And so I think what the evidence that we presented in this matter shows is that things were just fine with Mr. Williams in the department and he had the audacity to challenge the chief. And he challenged the chief both about discrimination against him and also about discrimination against other African American officers. And once that happened, what he's indicated in his affidavit and what we indicated in our pleadings is that nothing he could do at that point was correct. This is not something that's minimized. This is not something that is a number of discrete acts. This is something that's ongoing because what he indicated was he no longer had any support from his superiors and that he was accosted by his superiors about engaging in protected activity. Now the city mentions in their brief that Mr. Williams did not put them on notice of his contention that filing a lawsuit challenging discrimination was a protected activity. We think that goes without saying that once you file the EEOC charge and that you continue to process the EEOC charge and file a lawsuit that they're truly on notice. But beyond that, I would direct the court to look at paragraph 12 of our amended complaint where we describe in that amended complaint Mr. Williams being accosted by his superiors in reference to engaging in protected activity. And if the city had inquired into that, he was talking about that was the lawsuit. Once he had filed the lawsuit, chief occultry accosts him and challenges him about why he would file a lawsuit. But that's what is referred to in paragraph 12. So there was no surprise. And I might also say there should be no heightened pleading requirement in civil rights cases that we should look at the purpose that the United States Congress had when it adopted Title VII. And if we look at the Swierkiewicz case that we've cited, I think it makes it very clear that we're not supposed to lay out everything in a pleading, as the district court indicated and the city indicates, in reference to a discrimination claim. And I would say also that would apply to a retaliation claim. And so there was ample opportunity for them to know and to understand. And they even indicated in what they put forth to the court was that Mr. Williams' claim on the other case went through October of 2013. So there is an acknowledgment that the lawsuit relating to the first discrimination complaint extended through October of 2013. But somehow there's not an understanding that that is protected activity. Just on your statement that the pleading should be generously interpreted, are you pressing that there's reversible error as to the district court's resolution of your hostile work environment claim? Can you point to a paragraph in the pleading that reaches severe and pervasive aspects, or you're not pressing that? We are contesting that. And I go to, again, in the pleadings, I can't cite the exact paragraph, but in the paragraph we talk about once he filed a complaint and everything changed and nothing that he did was appropriate again. And, of course, we attach the EEOC information to the pleading. And so what we contend is this. When you're a police officer and it's a dangerous job and you don't have the support of the people above you and everything that you do is picked at and your evaluations change and things of that nature, that that creates a real hostile environment. And then when every opportunity is taken to charge you with things that are really fictitious or that don't really exist, don't merit an investigation, those investigations took time. They're not just a discreet act. What we've said is that once he filed a complaint,  and I think that's clear in terms of there being retaliatory harassment and a hostile environment. Are you claiming as well that he was passed over for promotion? Is that a claim in the Adverse Employment Act? We did challenge that, too, Your Honor. And what that involves was when Mr. Williams had tested, he was eligible for a promotion. He was bypassed in one memo. One memo said he's being bypassed. We provided in the summary judgment evidence examples of Officers Joan and LaFay having engaged in various kinds of misconduct, but the chief holding a job out for them or putting them on the suspense list that once their other matters are resolved, they're then put back on the list and given a job. And that opportunity was not presented to Mr. Williams. He was on indefinite suspension at the time, wrongfully, but we concede that he could not have been promoted at that time, but the things that were done for the other officers could have been done for him, and he didn't have to be eliminated completely from being eligible to get a promotion. So that is what we're saying. The two officers, the other officers who were eligible for promotion, the two that were suspended, you're saying they were eligible for promotion, but Mr. Williams was not? True. And what we're saying, he was not then in there eligible being on indefinite suspension, and they were not then in there on indefinite suspension. One had a 60-day suspension on his record shortly before, and I forget what Joan's was, but we mentioned that in the summary judgment response. But what I'm saying is the rules allow for you to say, okay, we're going to put you in this situation over here, and so if your indefinite suspension is resolved in your favor, then we're going to bring you back over and you get the position that you were entitled to. That option was available to them. They have discretion, and they didn't exercise that discretion for him. When Judge Sparks finds that there weren't similarly situated people, Corpus and Will, your answer is that they weren't similar because they didn't have indefinite suspensions, but the indefinite suspension was later lifted? Is that your answer? Okay. Well, if we get into the comparators, we have to look at comparators for the purposes of the promotion and comparators for the purposes of discipline. And if I might, let me just discuss that a bit. In terms of one of the things that Judge Sparks disregards is that when you look at the arbitrator holding, the arbitrator holding, giving Mr. Williams his job back, holds as a matter of law that his previous discipline could not be used against him. Number two, the city points you out to 902.9.3. We point out 902.9.4, which you must read in reading 902.9.3. And 902.9.4 says it's got to be the same type of policy violation before you can use a previous policy violation against an individual. So there was no, and we have two of the affidavits that I wanted to visit with you about that the district court disregarded. Two of those affidavits said very clearly that the rules were that the previous discipline had to be, I guess, with the same type of offense. And specifically, a former assistant chief who was on the executive staff of Chief Acevedo said that the previous discipline involving Mr. Williams and the discipline involving the Hyatt situation were not relevant, were not related. And so that previous discipline couldn't be used against him. So we think the district court disregarded all that evidence in deciding that there were no comparatives because once you reach the conclusion looking at 902.9.4 and the arbitrator decision and those affidavits, then Mr. Williams stands in the merit or comparable to the other individuals that are there. Now, one of the things the district court does and that the city maintains, and that is it's nearly identical. And this nearly identical is one of those things that has been used to really choke civil rights litigants. And it's not the law. I mean, McDonnell Douglas is being used as a sword. Judge Sparks cites our Lee decision for that proposition, which you don't discuss. Which one? The Lee decision. That's his authority in the Fifth Circuit case. Okay. Okay. Well, I know you've got a little time, but your arguments on the comparatives are interesting, but in your brief it was four sentences on the comparatives not being adequate. You just cite the arbitrator's reference to the Vick decision. I think I discussed that more, but maybe I'm wrong. Your Honor is probably right. I'll look back. But now we've got the oral argument. Do you want to get to the affidavits? Because you've only got a minute. Okay. Well, the affidavits are extremely important. I think that when we look at Rule 701 and we look at the three people who gave those affidavits, they have a great deal of credibility. We look at Chief Holt. We look at Wayne Vincent. We look at Lieutenant McMillan. What are the most damning statements in those affidavits? The most damning statements are there is a Lieutenant McMillan says that the chief made a racially bigoted comment to him about African-Americans, and he was highly offended by that. Chief Holt. What was the comment? The comment was he called Ockeltree dumb and lazy, and Ockeltree was his African-American assistant chief, and McMillan said he was highly offended by that. Also in the affidavits, you find that Chief Holt said that the chief discriminated against African-Americans. All three indicate that the chief has a retaliatory disposition. And further, Vincent, who had a great latitude being the police association president, said that the chief never cuts deals with anyone who's filed a discrimination complaint, that the chief had targeted Williams, and he joins those issues relating to the Pitbull incident, the Williamson County incident, because he represented Mr. Williams. He was familiar with the facts. He said there was nothing wrong with what Mr. Williams did in the Hyatt incident or the other two incidents. In fact, one of the significant things about the Hyatt incident that I have to point out to you is that with the Hyatt incident, we have a clear indication of something that justifies pretext or can be used under totality of the circumstances analysis under Arlington Heights or the mosaic method, and even as evidence, we think, under Haas versus Advo and the traditional analysis, and that is there was, I mean, you can't fire someone for being untruthful and lying, and you can't tell them what it is they were untruthful about or that they lied about. I think that is huge, and the district court just disregards that as if it's nothing, but the arbitrator said he's looked and searched the record, and he can find no allegation of that. So we think that when you look at all the evidence, there was enough evidence very clearly to move forward on this matter, and I really want to direct the court to Haas versus Advo and how they applied this standard. Thank you, Mr. Bristow. Ms. Lloyd? Good morning, and may it please the court. My name is Anjali Lloyd, and I'm assistant city attorney for the city of Austin. Blaine Williams was terminated after he received his second serious policy violation in only a two-year period. The record shows that the city's decisions to initiate internal affairs investigations and ultimately terminate Williams' employment with the Austin Police Department were based on legitimate non-discriminatories and not based off of the unlawful employment practices alleged. During my time here today, I'll address why Williams has failed to establish his prima facie case of race discrimination, retaliation, and hostile work environment, and then next I will address why there is no genuine fact dispute as to the issue of pretext. Williams failed to establish his race discrimination claim because, as has already been talked about, there are no similarly situated individuals who are treated more favorably that were outside of Williams' protected class under nearly identical circumstances. This court has addressed... He tried to, or he said that somehow or other the other two were still eligible for some sort of promotion while Mr. Williams was not? Is that... Your Honor, I'm not aware of any individuals who were indefinitely suspended who were eligible for promotion. The Chief Acevedo, in his declaration, stated that he has never promoted an individual who was indefinitely suspended at the time. And the individuals that was referenced by Mr. Bledsoe were with regards to his indefinite suspension in general, not the bypass promotion, as far as I'm aware of. He would have to explain that himself. The two that are identified got 115 and 60 days. In the end, his was reduced to what, 90 days? One, Mr. Frank Corpus, he received indefinite suspension, and that was reduced to 115 days. And the other gentleman got 60. And 20 days were he was allowed to take pay for that. So isn't that, in the end, roughly approximate to the suspension that the adjusted Williams discipline was? No, Your Honor, because Williams had a prior serious policy violation, which is defined by the Austin Police Department Policy Manual as any policy that results in more than three days' suspension or involves dangerous conduct. He already had one of those on his record at the time that his discipline was being contemplated for the indefinite suspension. In 2011, he had a 90-day suspension as a result of the HEB grocery store incident. What about his argument that city, the police department policies don't allow you to consider that prior history? The plain language of that policy states that you are allowed to consider it, and I ask that you read the plain language of 902.9.4. It states that prior policy violations can be considered under three circumstances. First, if it's same and similar and occurred within 36 months, or if it's a serious policy violation, as that's defined, like I said, more than three days or involving dangerous conduct, it can be considered at any time. Or the third scenario is when there's multiple violation policies that have been violated over the last several years. So there's three different circumstances of when a prior violation may be considered with purposes of determining the appropriate level of discipline. So how does that policy fit in with the expungement? And I thought they said Acevedo shouldn't have been looking at the record from the prior discipline. Right. So the expunction does not. There's case law on this, and I can't cite one off the top of my head, but I'd be happy to brief this issue for you. But there's case law that says when a matter has been expunged, it does not expunge the employment decisions. So when Williams was involved in the H-E-B grocery store incident, he violated four department policies. Those violations are not expunged. And, therefore, that can still be- In their brief, I think I'm correct that at page 40 is where they discuss this. It isn't much discussion, but it cites a short form of a case Vick, saying that that's the case the arbitrator relied on. It wasn't in the table of authorities. Do you know that case? I do know that case, Your Honor. And appellant misquoted what the arbitrator said. And, again, I encourage you to actually read the arbitrator's opinion because he states that this is not same and similar for purposes of that analysis. But there is no doubt that the Chief Acevedo could consider this serious prior policy violation. And so Vick states that you can consider that discipline. The purpose of the analysis of whether it's same and similar falls under whether it is 36 months or Williams, since he did have a prior serious policy violation where Chief Acevedo forwent his right to indefinitely suspend Williams and giving him the 90 days, Williams agreed that he would be under a period of 90-day suspension with a probation of one year. And so for purposes of that analysis, when you're under the probation, if you incur another policy violation that is same or similar, you're automatically indefinitely suspended. Going back to the same or similar, Williams has not pointed to any individuals who had a serious policy violation on their record at the time that their discipline was contemplated. This is very important, especially in light of Lee v. Kansas City Railway, where this court discussed several factors that should be taken into consideration when determining whether an individual is similarly situated. And one of those factors was comparable violations histories. The city is not arguing that they need to be the exact discipline histories, but it could be any officer that had more than three days' suspension on his record at the time that his new discipline was being contemplated. Furthermore, detrimental to Williams' similarly situated analysis, is he's failed to provide race evidence for many of the individuals that he has identified. Race is just not on the record, except for the only place that I'm aware of it is where the city provided it in its motion for summary judgment. As to the issue of retaliation, Williams has failed to provide causal connection between his protected activities and his adverse employment actions complained of. But he quoted two portions of affidavits that he suggests had racial animus at their core. I don't believe that that actually creates a genuine fact dispute as to racial animus. For instance, if you read the affidavits that he quotes and those sections that he quotes, there's actually no, like I said before, there's no evidence or even any, in the declarations they don't say what these individuals' race is. There's no evidence of race whatsoever, let alone the underlying facts to the scenarios that he points to. He points to numerous officers where the individuals disagree with the discipline that Chief Acevedo imposed, but gave no facts as to the background of that discipline or the race of those individuals. Affidavit, it's very specific over and over again about exact incidents that he participated and observed. The declarations, they're very conclusory, and they don't state what the individuals' prior. . . If those affidavits are conclusory, what's your best case? Because there's very little analysis by the district court or in your brief as to why all those affidavits that I thought were very detailed, not conclusory, would be disregarded. What's your best case that those affidavits can't be looked at? I don't believe they were disregarded, Your Honor. I believe that those facts that are provided there, they don't discuss the race of the officers. They don't discuss the serious policy violations or any policy violations that are on those officers' records at the time that their discipline was contemplated. Many of them don't discuss what the individuals were actually charged with. There's not enough information to determine whether those individuals are similarly situated for purposes of comparison, let alone to be able to determine whether the decisions made by the city and by Chief Acevedo were based off of some unlawful employment practices. But that's different. Saying the affidavits don't get them to meet the summary judgment threshold is different than saying they're inadmissible evidence, which is what I took Judge Sparks to say in what your brief says. In addition to your brief saying they're often conclusory and speculative, you argue that the statements that are referenced in the declarations are hearsay, the statements from the chief and from Oakletree. Explain to me why they would be hearsay because it seems to me there's a good argument that either they're statements by a party opponent, the agents, Oakletree and Acevedo are agents of the city of Austin, I assume, and also if you're talking about statements of racial or retaliatory animus, is it really for the truth of the matter or just to show that these were the opinions people were expressing and holding? So flesh out your hearsay argument for me. Yes, Your Honor. I would need to go through it a little bit more specifically. But the declarations, many of the scenarios, they don't even establish that it's the affiant's personal knowledge, except for in the beginning of the declaration where it says it's based off my personal knowledge. But then throughout the declarations, there's many times where they state that someone else said, someone else did this. And I can't cite the case off the top of my head, but I'd be happy to supplement for you. But there are cases on point that say that just a mere statement that everything contained in the declaration is within the affiant's personal knowledge. But you didn't cite any, and the district court cited one, Little v. Republic. Correct. Do you remember that case? Your Honor, I don't off the top of my head. Again, I would be happy to supplement a brief on this issue, however. As to further elaborate on the declarations, there's just not enough facts included in the statements and the scenarios to allow the district court to be able to determine, and I would say this court as well, to determine whether or not these are situations where the individuals disagree with the discipline imposed versus that the discipline was based on an unlawful employment practice. Mere disagreement with the discipline imposed does not create a Title VII action. There needs to be additional fact in order for there to be a material fact dispute as to the issue of pretext. But going back to the retaliation causation analysis, there is a 13-month gap between Williams filing his Equal Employment Opportunity Commission charge of discrimination and the first adverse employment action complained of. This court has found that between an eight- and nine-month gap actually negates causation, and we believe that a 13-month gap is too remote in time for there actually to be a causal connection. Williams also cites in the trial court this lawsuit that he filed in October of 2012. How can a long period of time negate causation? I mean, I certainly understand how it can't support causation, but let's say you had a three-year gap, but there's some comment out there that says, oh, you know, the boss doesn't forget. Remember that thing that happened three years ago, that, you know, look out next month, he's going to do something. I mean, how can it negate it if there's other evidence? Explain that to me. It's based off of proximity in time alone. There needs to be additional evidence. So if there was a statement, then that would be additional evidence that they are using the adverse or the protected activities as, I guess, their reason for the employment action. There is nothing here between the filing of the EEOC charge and the adverse employment actions complained of that would support a claim of retaliation. William cites the filing of the lawsuit occurring in October of 2012 as his argument to say that there was an ongoing protected activity. The court found that this was, that he wasn't going to entertain, I think was the language that he used, this theory. And the reason was, Mr. Bledsoe has argued that it's a pleading standard because he didn't put it in his pleadings. However, he also didn't put it in discovery. And the city had adjusted to it on that grounds that during the course of discovery, the lawsuit was never identified as a protected activity. The city directly made written discovery as to what William Williams was asking and also asked him questions during his deposition. And he consistently said it was the March 2012 EEOC charge. And so the court declined to entertain the ongoing protected activity theory. Didn't William say in his deposition, though, that at the National Association of Black Law Enforcement Officers, Ocletree said to him, you know, we heard, I just saw you file a lawsuit about discrimination. We know about that. He did say, during the deposition, I questioned Williams on that matter, on Ocletree confronting them, confronting him as to this EEOC charge. What about the state lawsuit, right? I thought it was about the state lawsuit. He says, we know you filed a lawsuit against us. Your Honor, I don't recall that off the top of my head. Okay. We can look at it. It's fine. But he said that there was just a mere statement of, did you file this? And Williams said, yes. And that was it. When I questioned Williams on the matter, he said there was nothing further that was said. Just the question of, did this happen? If it is in reference to the state lawsuit instead of the EEOC complaint in Williams' deposition, that discussion with Ocletree, would that be sufficient notice? I don't believe it would, Your Honor, because we had written discovery directly on point, and I don't believe that, you know, there was many matters that were discussed, some that Williams alleged was not a part of this lawsuit, as there are still ongoing matters that are going on in other cases. And I don't believe him just merely referencing an incident without saying that he believed that was a part of the scheme is sufficient to put the city on notice. When you say written discovery, was there an interrogatory that said list the protected activity or what? Yes, Your Honor. There was an interrogatory directly on point as well as some requests for production. His EEOC charge and none of the lawsuit information was produced, and the lawsuit was not identified in his interrogatory as a protected activity. Even though he supplemented that interrogatory two times during the course of discovery, he never supplemented his response to that interrogatory. I would like to take a moment before we end to address the hostile work environment claim. Even though it has not been discussed too much, I would like to state that Williams' briefing in both the lower court and this court was very vague. He failed to identify with any particularity what acts actually make up his claim of hostile work environment. As far as I can tell, it would be the internal affairs investigations, the policy violations, and ultimately the termination of Williams' employment, which are discrete acts, which the U.S. Supreme Court has stated gives little to no weight as to a hostile work environment claim, as they are not the type of acts that would generally be so substantial as to contribute to a work environment that's permeated with discriminatory ridicule, intimidation, and insult. Accordingly, we would argue that he has failed to establish his hostile work environment claim and ask that this court would uphold that decision, the trial court's decision to dismiss that claim. As to the issue of pretext, we have discussed a little bit about the interrogatories, but Williams also tries to establish pretext by alleging his innocence. He produces the affidavits that discuss that he never violated city policy in the first place, and Williams appealed that decision to an independent hearing examiner pursuant to Chapter 143 of the Texas Local Government Code. That independent hearing examiner held a full evidentiary hearing on the merits of those policy violations. Williams was allowed to present his arguments of whether or not he was acting in a law enforcement-related capacity or a non-law enforcement-related capacity during that hearing. Ultimately, it was the independent hearing examiner's decision that Williams did, in fact, violate three out of four of the Austin Police Department's policy. He did reduce it to only a 15-day suspension after he overturned the honesty violation, but he stated that Williams deserved more than 15 days, but that his hands were tied, and that was the max he was allowed to— Could he have been indefinitely suspended by the police department once they dismissed that one violation? With the other three violations, could he have been indefinitely suspended for those three violations? Absolutely, Your Honor. With already having a serious policy violation on his record as of 2011, where he was found to have violated four policies, and then again the three upheld, sustained policy violations, including a neglect of duty, which under the disciplinary matrix depends upon the facts of the circumstances, and the factors taken in 902.9.3, there's an entire list of factors that the chief can take into consideration, including whether an officer recognized how he violated the policy in order to have confidence and whether or not he can continue to do his job in the future. All of these factors could have been taken into consideration, and Williams could have been indefinitely suspended without the addition of the honesty policy violation that was added due to his chain of command and Chief Acevedo believing that Williams was making inconsistent statements in an effort to conceal his true culpability in violating EPD policy. And I see I'm just about out of time, so if there's no further questions, I'd like to end by stating that Williams' briefing in the trial court, he failed to identify with any particularity what evidence in the record supports his prima facie cases of race discrimination, retaliation, and hostile work environment. And we ask that you uphold the trial court's decision to dismiss his lawsuit against the city. Thank you. I will try to respond specifically to some of the things that I think you all raised or that Ms. Lloyd raised. Number one, the city attempts to conflate these issues, and in reference to just probably those last questions and in reference to whether they could have indefinitely suspended Williams for those, the answer, in our opinion, would be no. I think that the arbitrator ruling would suggest that. The arbitrator ruling suggests that, you know, maybe 15 days is not adequate. It should be somewhat more, but it doesn't say anything about indefinite suspension. And I think that if we look at 902.9.4, we totally disagree with their analysis of 902.9.4. And, again, we have Chief Holt and Wayne Vinson, who worked with that as a head of the association for many years. And that exception in there for the serious offenses relates to the 36-month requirement. It does not relate to the first sentence. If one looks at the very first sentence of 902.9.4, it talks about the same or similar policy violations. And that's what's allowed, prior offenses that are for the same or similar policy violations. And the arbitrator said it wasn't the case, and Vinson said it was not the case, and Holt said that was not the case, specifically about this case and this situation. In reference to the EEOC charge, I think it's clear that, indeed, the ‑‑ I think, Judge Costa, you had asked the question in reference to whether or not the response by Mr. Williams in the deposition about being accosted by Chief Ockeltree for filing a lawsuit, whether that satisfies the obligation. We think it does. Well, here's my other concern. It's not so much the pleading concern you focused on, but the city files for summary judgment. They say you have no evidence to support any of these claims. Under the summary judgment rules, in your response, you have to identify the evidence that you think does support the claims. It's not a matter of Judge Sparks or us just being able to look through the entire record and maybe find something that helps you. So I think this issue comes up with a number of the pieces of evidence you're relying on. But, for example, with that Ockeltree statement that was made at the Black Law Association national event, was that raised by you in your response to summary judgment before Judge Sparks? It was not, Your Honor. I didn't see that it was needed in the context of what was written. But, no, we didn't specifically say that, although Mr. Williams did address being accosted by his superiors in his affidavit that is attached. So there was evidence provided in the summary judgment about his being accosted that was in the affidavit of Mr. Williams. But we did not point to that in our actual written response. So we did not do that, Your Honor. What's your evidence to show pretext on the retaliation claim? Your Honor, I think that the pretext on the retaliation is similar to the pretext on the race. And first, again, let me go through it. The first piece is you charge a person with lying and you can't tell them what they lied for. Number two, you know, the state law, the rules, the meeting confer agreements say when you charge an officer with something, you need to tell them specifically what they're being charged with. And, like, Lieutenant McMiller says that what they did in this case and the information they gave to Mr. Williams was inadequate, that they didn't give him enough information to respond to. So why is it that you violate from your irregularities in this situation? If we look at Haas v. Igbo, Your Honor, Haas v. Igbo used one piece of evidence, and that was a comment by the person who was not the hiring official. And that comment, along with evidence that was used to create a prima facie case, was used to say that the case should be allowed to go to trial. So we think that, in this case, we have the evidence that the chief is retaliatory in nature from three individuals. We have the information in reference to there not being any kind of lie that actually existed. And we have the evidence that, in reference to the procedures, this is an irregularity. They departed from their own procedures. So we think those are pieces of evidence that clearly show that there was retaliation here. And I think further would be the serious nature of the charge. They could have charged Officer Williams with something a lot less. And I think if we go back and look at the comments that the chief made in reference to why he indefinitely suspended Williams, we look at how he treated the other officers. That's also evidence of pretext because Hernandez and Corpus committed criminal offenses. Secondly, what Corpus did, Corpus not only committed the criminal offense, but then he misrepresented things. And we look at Officer Weald. Officer Weald told seven consecutive lies to Internal Affairs, seven in a row. And then they said, you don't, that we're going to possibly change your career unless you change your answer. So they gave him an opportunity to change his answer, and then they changed the nature of the charge. And so the pretext, Your Honor, is if you look at the rules for discipline under the matrix, and you look at lying as lying and lying light, but when you charge someone with lying, you have no discretion. That's another reason why even the prior records aren't necessary because if you've got a lying allegation, then your prior record is irrelevant. You simply go to termination. But in those cases, even though the officers lied, they decided to file other charges. I think with Weald, they indicated that he didn't cooperate with the investigation. And, you know, we didn't produce the Weald information earlier because we didn't get it in discovery about them, and we discovered it in another case in another matter right before then. So that was a reason why we didn't produce Weald. But we'd encourage the Court to. Thank you, Mr. Breslin. Your time is up. Thank you very much, Mr. Lloyd. Thank you. That concludes the Court's oral arguments for today and will be in recess until 9 o'clock tomorrow morning.